SAVOY, Judge.
This is a suit for damages allegedly sustained by plaintiff, Louis A. Domingue, arising out of the publication of an article in the “Daily Advertiser”, a Lafayette newspaper. It is alleged that the article states plaintiff rented a camp to certain women who were allegedly involved in a vice raid; that this statement was false; that the statement was unrelated and unnecessary to the news story; and that it was deliberately printed with disregard for the truth and to scandalously identify petitioner with the named women allegedly involved in a vice raid. The information contained in the article was supplied by the Sheriff. Named as defendants are the corporation which publishes the newspaper, The Independent, Inc., the Sheriff of Lafayette Parish, W. E. Harson, and the liability insurer of the Sheriff, Fireman’s Fund Insurance Company.
The defendant, The Independent, Inc., filed a motion for summary judgment averring that plaintiff’s pleadings limited his action as against The Independent, Inc. to that of an intentional tort, choosing to abandon any issue of negligence, and asserting that it had not deliberately attempted to defame plaintiff, and there were no genuine issues of material fact. After trial, the motion was granted and summary judgment was rendered by the trial court, dismissing plaintiff’s suit as to this defendant. Plaintiff has appealed to this Court.
The evidence shows that the following news article appeared on the front page of the Daily Advertiser on July 31, 1964, to-wit:
“WOMAN CRITICAL AFTER OVERDOSE OF BARBITURATES
“A 23-year-old woman is in critical condition at Charity Hospital suffering from an apparent overdose of barbiturates, while two others have been arrested for vagrancy, Sheriff W. E. ‘Dick’ Harson said today.
“The name of the woman was not released pending notification of next of kin, and further investigation as to her connections with others arrested in a vice raid in Abbeville Wednesday night, the sheriff said.
“According to investigators, the sheriff’s office received a call at about 7:25 last night indicating that a woman had been taken to the hospital in an unconscious condition. Her stomach was pumped and the contents will be sent to the crime laboratory in Baton Rouge for analysis today, the sheriff said.
“He said she was still in critical condition.
“Further investigation revealed that the young woman had been staying in a camp on the Vermilion River between Lafayette and Carenero, Harson said.
“At the camp, officers arrested the two other women who were identified as Sally Ann Duncan, 19, General Delivery, Lafayette; and Mary Everette, 24, 309 3rd St., Lafayette.
“Both are in parish jail charged with vagrancy.
“Harson said both of the girls had been arrested the previous evening in the vice raid in Abbeville.
“The sheriff said the camp was leased to Louis A. ‘Black Cat’ Domingue, who in turn had rented it to the women.
“Bond on these two has been set. Har-son said charges are pending on the woman in the hospital, but the nature of the charges was not revealed.”
On August 2, 1964, the following related article also appeared on the front page of the same newspaper, to-wit:
“WOMAN WHO TOOK PILLS IS IMPROVED
“The young woman who had taken an overdose of pills Thursday was identified Saturday by sheriff’s deputies as *610 Janet Gertrude Furtado, 21, originally from the New Orleans area.
“Officers said she had taken an overdose of seconal while at a camp near Lafayette which is rented to Arphy Justine ‘Bobby’ Sonnier.
“Two other women were arrested at the camp, and charged with vagrancy. They are Sally Ann Duncan, 19, and Mary Everett, 24. Both were released on $250 bond each.
“Miss Furtado’s condition is improved, officers said.
“Officers said Miss Duncan and Miss Everette were among those arrested the previous night in a vice raid in Abbe-ville.”
At the trial of the motion, the defendant newspaper introduced copies of the above articles; the demand letter of plaintiff’s attorney; plaintiff’s original petition; two depositions of plaintiff; interrogatories to plaintiff and his answers; the deposition of Arthur Martinez, the reporter for the newspaper who was given the information and who wrote the article; the deposition of Earl Picard, an investigator for the Sheriff’s office who furnished the information for the article to Mr. Martinez; the deposition of the Sheriff; the deposition of William S. Elder, a reporter for a Lafayette television station who was present when Picard furnished the information on which Martinez based the article; the deposition of Bob Richard Hamm, news director of the television station KATC; and affidavits of the Editor and the Publisher and General Manager of the newspaper. Plaintiff filed no counter affidavits or depositions.
The basis of the trial court’s holding is that plaintiff had alleged that the newspaper committed a deliberate action to defame him, that this allegation was more than refuted by the positive evidence as submitted which negated an intention on the part of the newspaper to defame plaintiff, and that plaintiff had failed to file counter affidavits.
Plaintiff maintains that it was not necessary for him to file counter affidavits inasmuch as the depositions which were already filed contained evidence of material issues of fact that are in dispute, and that it was not necessary for him to refile that which was already in the record. Plaintiff maintains that the trial court erred in limiting plaintiff’s allegations to a “deliberate act intending to defame” as the petition as a whole encompassed a broader view. Plaintiff contends that the mere denial of intent by the publisher, the general manager and the reporter of the newspaper saying they intended no harm to plaintiff was not conclusive of the issues of the case. It is maintained that there are conflicts as shown in the depositions as to what actually happened when the newspaper obtained the story so as to raise material factual issues, particularly as to the intent of the newspaper, which can be fairly resolved only by a full trial on the merits.
Defendant newspaper maintains that the single issue presented by the motion for summary judgment was whether or not the newspaper committed an intentional tort, and that the record contains only proof that it did not. It is submitted that the record amply supports the findings of the trial court.
After reviewing the pleadings, this Court does not find that plaintiff limited his cause of action to an intentional tort. The pertinent paragraphs of plaintiff’s petition are as follows:
“VIII.
“That the manner in which the article was written connotes that your petitioner was involved with women who had been involved in a vice raid in Abbeville, Louisiana.
“IX.
“Your petitioner specifically avers that the story insofar as it stated a fact that he rented a camp to the women involved *611 in the vice raid is absolutely false and unfounded.
“X.
“Petitioner avers that the defendant, The Independent, Inc., has its place of business in the City of Lafayette, Louisiana, wherein your petitioner resides and the defendant paper could have inquired about the truth of the charge but on the contrary deliberately printed said story with disregard for the truth.
“XI.
“Petitioner further alleges that he had personally advised deputies of the Sheriff’s Office that he had not rented a camp to the women involved in the raid.
“XII.
“Petitioner further avers that the accusation contained in the article and the manner in which it was printed have subjected petitioner to public contempt, scorn and ridicule and have deprived your petitioner of the benefit of his good reputation.
“XIII.
“Your petitioner alleges that the statement contained in the article about his renting the camp to the women was unrelated and unnecessary to the news story and the sole purpose for its publication was to scandalously identify your petitioner with the named women who allegedly were involved in a vice raid and thus cast an aspersion upon your petitioner’s good name.”
We note particularly that Article X of plaintiff’s petition alleges negligence and states that the newspaper “deliberately printed said story with disregard for the truth”. A fair interpretation of this pleading would state a cause of action against defendant for printing a libelous statement without just or probable cause to believe the statement was true. Such an allegation does not require proof of an intentional tort.
The principles of law applicable to motions for summary judgment are found in the case of Fontenot v. Aetna Insurance Company, 225 So.2d 648 (La.App. 3 Cir. 1969), at page 651, to-wit:
“Summary judgments may be granted when the pleadings, depositions, interrogatories, admissions, and affidavits show there is no genuine issue as to material facts. LSA-C.C.P. Art. 966. However, the summary judgment remedy is not a substitute for a trial’ where there is a genuine issue of material fact which must be resolved.
“In passing upon a motion for summary judgment, the function of the court is not to determine the merits of the issues raised, but rather only to determine whether or not there is a genuine issue of material fact. To obtain a summary judgment it is not sufficient to prove that it is unlikely that the plaintiff may recover, nor that the showing then made preponderantly indicates there is no liability. The burden of showing that there is not a material factual issue is upon the mover for summary judgment. All doubts are to be resolved against the granting of a summary judgment and in favor of a trial on the merits to resolve disputed facts. See: Kay v. Carter, et al, 243 La. 1095, 150 So.2d 27; Roy & Roy v. Riddle, La.App. 3rd Cir., 187 So.2d 492; Green v. Southern Bell Tel. & Tel. Co., La.App. 3rd Cir., 204 So.2d 648.
“We have further noted that the summary judgment device is often not appropriate when based only upon a defendant’s uncontradicted affidavits and admissions to negate subjective facts material to the fact case, such as motive, intent, malice, good faith, or knowledge, Roy & Roy v. Riddle, La.App. 3rd Cir., 187 So.2d 492. In such instances, as we noted at 187 So.2d 495: ‘To permit a defendant by ex parte affidavit to avoid *612 a trial on the merits would thus permit him to “withdraw these witnesses from cross-examination, the best method yet devised for testing trustworthiness of testimony”, Subin (Subin v. Goldsmith, 2 Cir., 224 F.2d 753.) cited above at 224 F.2d 758, as well as to withdraw their testimony from effective demeanor-evaluation by the trier of fact which in the light of all the circumstances, may determine that the witness’s words which negate, are nevertheless untrue in the light of all circumstances.’ ”
A reading of the depositions and affidavits indicates that there is a conflict in the evidence as to what Deputy Picard actually stated to Arthur Martinez, the reporter for the newspaper. An issue of fact is raised as to whether or not Martinez had reasonable grounds for believing that the camp involved was leased to the women by plaintiff. Although the evidence is conflicting and his testimony is somewhat confused, Deputy Picard stated in his deposition that he told both Martinez and Elder at the news conference that the camp had been rented to Bobby Sonnier by the plaintiff. On this question, William S. Elder, the reporter for the television station, who was also present at that time, stated that he and Martinez pressured Picard into telling them the name of the owner of the camp where the women were picked up, and that Picard said that he could not give an official release, but that he thought the camp belonged to plaintiff, and “it’s up to you to follow it up”. Elder stated that he later returned to the television station, went over the material with his supervisor, Mr. Hamm, then phoned Picard to try to verify that the camp did belong to plaintiff. He stated that Picard asked to allow him to call him back, then called back in about one-half hour and stated that to the best of his knowledge the camp belonged to plaintiff, but that it had been leased out to someone else, that he thought it was leased to Bobby Sonnier, but that again he did not want to have the information used as having been issued from the Sheriff’s office. Accordingly, Elder stated that they scratched that part of the story and did not use it in presenting the news on television. Martinez testified otherwise. He stated he obtained the information from Deputy Picard as an official release or quote from the Sheriff’s department, and that Deputy Picard told him the women were residing in a camp which they had rented from plaintiff. He stated that Picard subsequently advised him that plaintiff rented the camp to Bobby Sonnier instead of the women. He stated he mentioned plaintiff’s name only to locate the camp, and he accepted the facts as given by the Sheriff’s office without further investigation, as was customary. He stated he did not know the plaintiff, had never met him, had no intent to hurt the plaintiff, and had no malice or ill feeling toward the plaintiff.
Since there was a genuine issue of material fact, the procedure for a summary judgment should not have been substituted for a trial on the merits. It was not necessary for plaintiff to refile the affidavits or depositions which were already in evidence, as it was the defendant’s burden to show that there was no material factual issue. Because of the conflict in evidence, defendant failed to carry the burden. All doubts are resolved against the granting of a summary judgment and in favor of a trial on the merits to resolve disputed facts.
Defendant-appellee contends that Francois v. Capital City Press, 166 So.2d 84 (La.App. 3 Cir. 1964) supports the trial court judgment. In Francois, supra, summary judgment was granted to the defendant newspaper even though the news article may have erroneously stated that plaintiff was criminally charged. But in Francois, supra, the news article accurately reported facts released by the State Police. Here, the depositions indicate that there is a dispute as to what facts were released by the Sheriff’s office.
For the reasons assigned, we conclude that the district court erred in granting a *613 summary judgment in favor of The Independent, Inc. Accordingly, said judgment is set aside, and this case is remanded for further proceedings not inconsistent with the views herein expressed. The defendant-appellee, The Independent, Inc., is assessed with all costs in the district court of the trial of the motion for summary judgment and all costs of this appeal.
Reversed and remanded.